IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STATE AUTOMOBILE MUTUAL INSURANCE COMPANY | § § § | |
| Plaintiff | § § | |
| v. | § § | |
| FREEHOLD MANAGEMENT, INC. AND RETAIL PLAZAS, INC. | § § § | CIVIL ACTION NO. 3:16-cv-02255-L |
| Defendants | § § § | |
| v. | § § | |
| FREEHOLD MANAGEMENT, INC., RETAIL PLAZAS, INC., AND RPI DENTON CENTER, LTD. | § § § § | |
| Counter-Plaintiffs | § | |

## DEFENDANTS AND COUNTER-PLAINTIFFS' MOTION TO STRIKE THE EXPERT TESTIMONY OF HALLMARK ROOFING

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendants, Freehold Management, Inc. and Retail Plazas, Inc., and Counter-Plaintiffs, Freehold Management, Inc., Retail Plazas, Inc., and RPI Denton Center, LTD. (hereafter collectively "Freehold" or "the Freehold Entities") file this motion to strike the expert testimony of Hallmark Roofing. In support of this motion, the Freehold Entities would show this honorable Court the following

### I.   Summary of the Argument

The testimony of Plaintiff's designated expert, Hallmark Roofing, is not relevant to the issues remaining in this case. As a result, this testimony should be stricken because it will not help the jury. *See* FED R. EVID. 702.

## II.     Factual Background

Freehold Management purchased an insurance policy from State Auto to cover property losses at a shopping center located at 500-1900 W. University Dr., Denton, Texas 76201 (hereafter "Denton Center"). *(Document 1 at 2)* On or about April 3, 2014, during the subject policy period, a wind and hail storm caused substantial damage to Denton Center. *(Document 1 at 2)* Freehold Management thereafter reported this loss to Frank Swingle of Swingle, Collins & Associates, who reported same to State Auto. *(Document 16-1 at 5)*

State Auto assigned an adjuster, Sherri King, Executive General Adjuster to adjust Freehold Management's insurance claim. *(Document 16-1 at 5)* Ms. King, on behalf of State Auto, hired Hallmark Roofing & Construction, LLC to estimate the cost to repair the damage and Haag Engineering (hereinafter "Haag") to investigate the loss. *(Document 16-1 at 5)*

On July 15, 2014, State Auto issued a partial denial of the Freehold entities' claim stating "Our investigation has determined that some of the damages to the roof structures are not covered under the aforementioned policy," and relying on Haag's conclusions. During the course of the claim, State Auto made payments totaling $1,036,397.17 to Freehold Management for hail damage from the subject storm, but maintained that the all of built up roofs of the Denton Center (which are the subject of this litigation) were not damaged based upon Haag's findings. *(Document 16-1 at 7)*

Disagreeing with State Auto, Freehold Management hired Matt Phelps of APEC Engineering and Laboratory LLC (hereinafter "APEC") to conduct an independent inspection of the Kroger roof damage. *(Document 16-1 at 7)* APEC found that both wind and hail damaged the built up Kroger roof. *(Document 16-1 at 7)*

The Freehold Entities provided APEC's report on the Kroger roof to State Auto. *(Document 16-1 at 7)* Thereafter, State Auto informed Freehold Management that it found APEC's report unpersuasive, rejected APEC's conclusions, and stood by its denial for payment of the Kroger roof damage, based upon Haag's report. *(Document 16-1 at 7-8)* Thereafter, the Freehold Entities sent State Auto a demand letter on June 20, 2016. Instead of trying to resolve the matter, State Auto's response to the demand letter was to file a declaratory action against Freehold in Federal Court on August 3, 2016. *(Document 1)*

After State Auto filed suit, APEC created a second report regarding the additional built up roofs at the Denton Center, which it determined all needed to be replaced. *(Document 16-1 at 8)* The Freehold Entities' current estimates for replacement of all of the built up roofs (including Kroger) and underlying decking at the Denton Center damaged by the April 3, 2014 storm are in the range of approximately $14,000,000-$16,000,000.

### III. Relevant Procedural Background

On August 3, 2016, State Auto filed for a Declaratory Judgment requesting that the Court find:

- That the alleged damage to the subject properties was not caused by a covered cause of loss within the meaning of the plain language of the Policy;
- That and to what extent Policy exclusions bar coverage for the Defendants' claim;
- That and to what extent the Policy's other limitations, terms, and conditions preclude the Defendants from recovering on its claim.
- That and to what extent the Defendants are precluded from collecting recoverable depreciation and/or replacement cost value.

*(Document 1)* The Freehold Entities filed counterclaims for breach of contract, violations of the Texas Insurance Code, violations of the Texas Deceptive Trade Practices Act, and breach of the common law duty of good faith and fair dealing.

*(Documents 6, 16-1, and 25)* Freehold seeks the unpaid withheld depreciation and payment for the denied damages to the built up roofs and underlying decking at the Property. *(Documents 6, 16-1, and 25)* Freehold does not dispute the replacement cost value estimates for the items that State Auto accepted coverage on. *(Documents 6, 16-1, and 25)*

On January 15, 2018, Plaintiff filed its supplemental expert disclosures in this case, designating Hallmark Roofing as an expert. *(Document 37)* Thereafter, on June 1, 2018, Plaintiff filed its second supplemental expert disclosures. *(Document 74)* In its designation of Hallmark Roofing, Plaintiff stated:

> Plaintiff/Counter-Defendant anticipates that Hallmark Roofing, their employees, agents, contractors, authorized representatives, engineers, estimators, and records custodians, and those listed above are expected to testify, among other things, regarding the actual cost and method of repairs for the roofing material present on Defendant/Counter-Plaintiff's roof on the property that is the subject of this lawsuit. Hallmark Roofing inspected the property and provided estimates for the cost of roof repairs for the property at issue in this case among other things. Hallmark Roofing, its agents, employees, estimators, and representatives are fact witnesses whose testimony will likely include testimony that is considered "expert" testimony under the Federal Rules, and as such, are being designated out an abundance of caution. Hallmark Roofing will likely testify regarding the cost of roof repairs at the aforementioned properties, and the market rate for the repairs included in the estimates. All documents related to Hallmark Roofing's involvement in this claim have been previously produced by the Plaintiff and are incorporated herein by reference for all purposes. See also the deposition testimony taken of Kenny Hall.

*(Document 74 at 9)* Kenny Hall was deposed by Freehold on May 24, 2018. *(Exhibit A)* The discovery period in this case ended on June 4, 2018. *(Document 52 at 4)* This case is set for trial on February 4, 2019. *(Document 92)*

## IV.  Motion to Strike Hallmark Roofing

### A.  Legal Standard

Rule 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge *will help the trier of fact* to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702 (emphasis added).  Under *Daubert*, expert testimony is admissible only if the proponent demonstrates that: (1) the expert is qualified; (2) the evidence is relevant to the suit; and (3) the evidence is reliable. *Nerium SkinCare, Inc. v. Nerium Int'l, LLC,* No. 3:16-CV-1217-B, 2018 WL 3520840, at *2 (N.D. Tex. July 3, 2018), *report and recommendation adopted in part sub nom. Nerium SkinCare, Inc. v. Nerium Int'l, LLC*, No. 3:16-CV-1217-B, 2018 WL 3496422 (N.D. Tex. July 20, 2018); *See Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988-89 (5th Cir. 1997).

In deciding whether to admit or exclude expert testimony, courts typically consider five non-exclusive factors:

1. Whether the theory or technique has been tested;

2. Whether the theory or technique has been subjected to peer review and publication;

3. The known or potential rate of error of the method used;

4. The existence and maintenance of standards and controls in the methodology; and

>   5. Whether the theory or method has been generally accepted by the scientific community.

*Id.; Daubert*, 113 S.Ct. at 2796-97. The purpose of such an inquiry is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Nerium,* No. 3:16-CV-1217-B, 2018 WL 3520840, at *2; *Skidmore v. Precision Printing and Packaging, Inc.*, 188 F.3d 606, 618 (5th Cir. 1999) (*quoting Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152, 119 S.Ct. 1167, 1176, 143 L.Ed.2d 238 (1999)). The party offering the expert testimony has the burden of establishing that it is admissible under Rule 702 and the *Daubert–Kuhmo* standard. *GWTP Investments, L.P. v. SES Americom, Inc.*, No. 3:04-CV-1383-L, 2007 WL 7630459, at *3 (N.D. Tex. Aug. 3, 2007) *See Kumho,* 526 U.S. at 147; *see also Mathis v. Exxon Corp.*, 302 F.3d 448, 459–460 (5th Cir.2002).

   1. **Relevance**

   To be relevant, the testimony must assist "the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702; *see also United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004)(quoting *United States v. Bourgeois*, 950 F.2d 980, 987 (5th Cir. 1992)); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993). The Federal Rules of Evidence define relevant evidence as that which "has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." FED. R. EVID. 401. In other words, the expert testimony must be applicable to the facts in issue. *Daubert*, 509 U.S. at 592–93.

## 2. Reliability

"Reliability hinges on the sufficiency of the facts or data upon which the opinion is based, the dependability of the principles and methods employed, and the proper application of the principles and methods to the facts of the case." *Greenspoint Inv'rs, Ltd. v. Travelers Lloyds Ins. Co.*, No. CV H-10-4057, 2015 WL 12762088, at *1–2 (S.D. Tex. Mar. 5, 2015); *See* FED. R. EVID. 702. As the Supreme Court has recognized, the *Daubert* factors "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of [the] testimony." *Kumho Tire*, 119 S.Ct. at 1175; *see also Watkins*, 121 F.3d at 988-89 ("Not every guidepost outlined in *Daubert* will necessarily apply to expert testimony[.]"). A trial court has wide latitude in deciding how to determine reliability, just as it has considerable discretion with respect to the ultimate reliability determination. *See Kumho Tire*, 119 S.Ct. at 1176.

## B. Hallmark Roofing's testimony is not relevant to the issues in the case.

Hallmark Roofing was designated to testify as to the cost of roof repairs and the market rate for roof repairs at the Property.[1] *(Document 74)* No report for Hallmark was provided, and when deposed, it became clear that Hallmark Roofing only has opinions as to the replacement cost value of the scope of work provided by State Auto that is not in dispute. As a result, Hallmark roofing cannot provide any relevant testimony to help the trier of fact and should be stricken.

---

[1] Freehold asserts that the designation, *see* Section III *supra*, was deficient as it did not provide a report, or a "summary of the facts and opinions to which the witness is expected to testify." *See* FED. R. CIV. P. 26(a)2.

1. **The Facts in Issue in the Case**

In Plaintiff's Complaint, Plaintiff requested that the Court determine the following four issues:

- That the alleged damage to the subject properties was not caused by a covered cause of loss within the meaning of the plain language of the Policy;
- That and to what extent Policy exclusions bar coverage for the Defendants' claim;
- That and to what extent the Policy's other limitations, terms, and conditions preclude the Defendants from recovering on its claim.
- That and to what extent the Defendants are precluded from collecting recoverable depreciation and/or replacement cost value.

*(Document 1)* In Freehold's amended counterclaim, Freehold alleges that Plaintiff breached the insurance contract; violated the Texas Insurance Code, Texas Deceptive Trade Practices Act, and common law duty of good faith by:

- Hiring and relying upon a biased engineer to deny or lowball the claim;
- Failing to conduct a proper investigation into the insurance claim;
- Wrongfully denying the claim for damage to *the built up roofs and their underlying decking* at the property;
- Wrongfully delaying the payments it made; and
- Failing to properly pay the claim, including some withheld *depreciation*.

*(Document 16-1)*

Neither of the parties disputes the valuation of the items that State Auto accepted coverage for, they simply disagree as to whether or not the built up roofing and underlying decking was damaged by the subject storm and whether or not all of the withheld depreciation has been paid. *(Documents 1, 16-1, and 26)*

2. **Hallmark's Testimony and Opinions**

At the deposition, Hallmark testified that his involvement in the insurance claim was to meet Paul Douglas, look at and evaluate the Property with Douglas, and to write

an estimate for whatever it would take to "put back" the items that Paul Douglas determined were damaged. *(Exhibit A at 29:2-9)* Hallmark noted that Paul Douglas told Hallmark what was damaged and that Hallmark is not a licensed adjuster. *(Exhibit A at 29:20-24)*

Hallmark did not review any estimates other than those that were submitted during the claims process and did not estimate the cost to replace the fields of the built up roofing or the decking below them. *(Exhibit A at 39:19-40:20)* Hallmark did say that they were approached by counsel to research the pricing of the fields and decking of the roof, but that they hadn't been able to do that yet. *(Exhibit A at 40:21-41:14)* Hallmark likewise had no opinions about the validity of Freehold's estimate from Chaparral Consulting. *(Exhibit A at 42:25-43:21)*

Hallmark did not calculate depreciation or actual cash value in any of its estimates and did not have the information to calculate depreciation. *(Exhibit A at 79:19-80:14)* No further estimates or opinions of Hallmark Roofing were provided after the deposition.

It is clear from the deposition testimony that Hallmark does not have any relevant expert opinions about the disputed portions of the claim, the fields of the built up roofs and the underlying decking. (*See Exhibit A generally*) Hallmark had no opinions regarding the estimates provided by Freehold for these items, and had no opinion as to "the cost of roof repairs and the market rate for roof repairs at the Property" outside of the numbers provided for the previously accepted portions of the claim, which are not in dispute. *(Exhibit A at 39:19-40:20 and 42:25-43:21)* As a result, Hallmark's opinion testimony will not help the trier of fact and is not admissible. *See* FED R. EVID. 702.

WHEREFORE, PREMISES CONSIDERED, Defendants/Counter-Plaintiffs pray that this Court grant their motion to strike the expert testimony of Hallmark Roofing; refuse to allow Hallmark Roofing or its representatives to provide expert testimony at trial; and award Defendants/Counter-Plaintiffs such other relief as may be proper.

Respectfully submitted,

*Loree & Lipscomb,*
777 E. Sonterra Blvd., Suite 320
San Antonio, Texas 78258
Telephone: (210) 404-1320
Facsimile:  (210) 404-1310


By: */s/ Cassandra Pruski*
    Robert W. Loree
    State Bar No. 12579200
    rob@lhllawfirm.com
    Todd Lipscomb
    State Bar No. 00789836
    todd@lhllawfirm.com
    Cassandra Pruski
    State Bar No. 24983690
    cassie@lhllawfirm.com

*Attorneys for Freehold Entities*

**CERTIFICATE OF CONFERENCE**

On August 6, 2018, the Defendants and Counter-Plaintiffs' counsel, Todd Lipscomb conferred with Plaintiff's counsel, Kaitlin Kerr by phone. Ms. Kerr indicated that Plaintiff is opposed to relief requested by this motion, so it is presented for the Court's review.

*/s/ Todd Lipscomb*
Todd Lipscomb

## CERTIFICATE OF SERVICE

      I certify that the Freehold Entities have served a true and correct copy of the foregoing document on August 6, 2018 through the Court's electronic filing (CM/ECF) system and by facsimile transmission to the following counsel of record:

Charles B. Mitchell, Jr.
Michael Shane O'Dell
NAMAN, HOWELL, SMITH & LEE, PLLC
405 Forth Worth Club Building
306 West 7th Street
Fort Worth, Texas 76102-4911

Christopher D. Kratovil
Alison R. Ashmore
*DYKEMA COX SMITH*
1717 Main Street, Suite 4200
Dallas, Texas 75201
Telephone: (214) 462-6400
Facsimile: (214) 462-6401

                                                          */s/ Cassandra Pruski*
                                                          Cassandra Pruski