IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STATE AUTOMOBILE MUTUAL INSURANCE COMPANY | § § § | |
| Plaintiff | § § | |
| v. | § § | |
| FREEHOLD MANAGEMENT, INC. AND RETAIL PLAZAS, INC. | § § § | CIVIL ACTION NO. 3:16-cv-02255-L |
| Defendants | § § § | |
| v. | § § | |
| FREEHOLD MANAGEMENT, INC., RETAIL PLAZAS, INC., AND RPI DENTON CENTER, LTD. | § § § § | |
| Counter-Plaintiffs | § | |

**DEFENDANTS AND COUNTER-PLAINTIFFS' BRIEF IN SUPPORT OF THEIR AMENDED MOTION TO STRIKE THE EXPERT TESTIMONY OF TIMOTHY MARSHALL**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendants, Freehold Management, Inc. and Retail Plazas, Inc., and Counter-Plaintiffs, Freehold Management, Inc., Retail Plazas, Inc., and RPI Denton Center, LTD. (hereafter collectively "Freehold" or "the Freehold Entities") file this brief in support of their amended motion to strike the expert testimony of Timothy Marshall. In support of this motion, the Freehold Entities would show this honorable Court the following:

**Brief in Support of Amended Motion to Strike Timothy Marshall**                    I

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. II

TABLE OF AUTHORITIES ........................................................................................... III

SUMMARY OF THE ARGUMENT .................................................................................. 1

FACTUAL BACKGROUND ............................................................................................ 1

RELEVANT PROCEDURAL BACKGROUND .................................................................. 2

ARGUMENT AND AUTHORITIES ................................................................................. 5

    A.  Legal Standard ............................................................................................. 5

        1.  *Relevance* ................................................................................................. 6

        2.  *Reliability* ................................................................................................ 7

    B.  Timothy Marshall's opinion testimony is unreliable. ....................... 7

        1.  *Marshall used unreliable sources.* ................................................................. 8

        2.  *Marshall's methodology is unreliable.* ........................................................ 10

**CERTIFICATE OF SERVICE** ................................................................... 12

## TABLE OF AUTHORITIES

**Cases**

*Consol. Grain & Barge Co. v. Marcona Conveyor Corp.*, 716 F.2d 1077, 1083 (5th Cir. 1983) ..............................................................................................................................10

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993) .......................................1, 6

*Greenspoint Inv'rs, Ltd. v. Travelers Lloyds Ins. Co.*, No. CV H-10-4057, 2015 WL 12762088, at *1–2 (S.D. Tex. Mar. 5, 2015) .................................................................7

*Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007) ........................................................ 8

*Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152, 119 S.Ct. 1167, 1176, 143 L.Ed.2d 238 (1999) ................................................................................................................. 6

*Mathis v. Exxon Corp.*, 302 F.3d 448, 459–460 (5th Cir.2002) ............................................. 6

*Matter of M&M Wireline & Offshore Services, LLC*, No. CV 15-4999, 2016 WL 4679937, at *4 (E.D. La. Sept. 7, 2016) (emphasis added) .....................................................10

*Meadows & Walker Drilling Co. v. Phillips Petroleum Co.*, 417 F.2d 378 (5th Cir. 1969) ....10

*Moore v. Int'l Paint, L.L.C.*, 547 Fed.Appx. 513, 515 (5th Cir. 2013) ....................................... 8

*Nerium SkinCare, Inc. v. Nerium Int'l, LLC,* No. 3:16-CV-1217-B, 2018 WL 3520840, at *2 (N.D. Tex. July 3, 2018) ............................................................................................... 5

*Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 389 (5th Cir.2009) ......................... 8

*Skidmore v. Precision Printing and Packaging, Inc.*, 188 F.3d 606, 618 (5th Cir. 1999) ....... 6

*United States v. Bourgeois*, 950 F.2d 980, 987 (5th Cir. 1992) ............................................... 6

*United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004) ....................................................... 6

*Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988-89 (5th Cir. 1997) ............................................. 5

**Rules**

FED. R. EVID. 401 ................................................................................................................ 6

FED. R. EVID. 702 ..........................................................................................................5, 6, 7

## SUMMARY OF THE ARGUMENT

The opinion testimony of Plaintiff's designated expert, Timothy Marshall, is not reliable under the *Daubert* standard. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993). As a result, this testimony should be stricken. *Id.*

## FACTUAL BACKGROUND

Freehold Management purchased an insurance policy from State Auto to cover property losses at a shopping center located at 500-1900 W. University Dr., Denton, Texas 76201 (hereafter "Denton Center"). *(Document 1 at 2)* On or about April 3, 2014, during the subject policy period, a wind and hail storm caused substantial damage to Denton Center. *(Document 1 at 2)* Freehold Management thereafter reported this loss to Frank Swingle of Swingle, Collins & Associates, who reported same to State Auto. *(Document 16-1 at 5)*

State Auto assigned an adjuster, Sherri King, Executive General Adjuster to adjust Freehold Management's insurance claim. *(Document 16-1 at 5)* Ms. King, on behalf of State Auto, hired Timothy Marshall & Construction, LLC to estimate the cost to repair the damage and Haag Engineering (hereinafter "Haag") to investigate the loss. *(Document 16-1 at 5)*

On July 15, 2014, State Auto issued a partial denial of the Freehold entities' claim stating "Our investigation has determined that some of the damages to the roof structures are not covered under the aforementioned policy," and relying on Haag's conclusions. During the course of the claim, State Auto made payments totaling $1,036,397.17 to Freehold Management for hail damage from the subject storm, but

maintained that the all of built up roofs of the Denton Center (which are the subject of this litigation) were not damaged based upon Haag's findings. *(Document 16-1 at 7)*

Disagreeing with State Auto, Freehold Management hired Matt Phelps of APEC Engineering and Laboratory LLC (hereinafter "APEC") to conduct an independent inspection of the Kroger roof damage. *(Document 16-1 at 7)* APEC found that both wind and hail damaged the built up Kroger roof. *(Document 16-1 at 7)*

The Freehold Entities provided APEC's report on the Kroger roof to State Auto. *(Document 16-1 at 7)* Thereafter, State Auto informed Freehold Management that it found APEC's report unpersuasive, rejected APEC's conclusions, and stood by its denial for payment of the Kroger roof damage, based upon Haag's report. *(Document 16-1 at 7-8)* Thereafter, the Freehold Entities sent State Auto a demand letter on June 20, 2016. Instead of trying to resolve the matter, State Auto's response to the demand letter was to file a declaratory action against Freehold in Federal Court on August 3, 2016. *(Document 1)*

After State Auto filed suit, APEC created a second report regarding the additional built up roofs at the Denton Center, which it determined all needed to be replaced. *(Document 16-1 at 8)* The Freehold Entities' current estimates for replacement of all of the built up roofs (including Kroger) and underlying decking at the Denton Center damaged by the April 3, 2014 storm are in the range of approximately $14,000,000-$16,000,000.

### RELEVANT PROCEDURAL BACKGROUND

On August 3, 2016, State Auto filed for a Declaratory Judgment requesting that the Court find:

- That the alleged damage to the subject properties was not caused by a covered cause of loss within the meaning of the plain language of the Policy;
- That and to what extent Policy exclusions bar coverage for the Defendants' claim;
- That and to what extent the Policy's other limitations, terms, and conditions preclude the Defendants from recovering on its claim.
- That and to what extent the Defendants are precluded from collecting recoverable depreciation and/or replacement cost value.

*(Document 1)* The Freehold Entities filed counterclaims for breach of contract, violations of the Texas Insurance Code, violations of the Texas Deceptive Trade Practices Act, and breach of the common law duty of good faith and fair dealing. *(Documents 6, 16-1, and 25)* Freehold seeks the unpaid withheld depreciation and payment for the denied damages to the built up roofs and underlying decking at the Property. *(Documents 6, 16-1, and 25)* Freehold does not dispute the replacement cost value estimates for the items that State Auto accepted coverage on. *(Documents 6, 16-1, and 25)*

November 15, 2017, Plaintiff filed its first designation of experts, including Timothy Marshall. On January 15, 2018, Plaintiff filed its supplemental expert disclosures in this case, again designating Timothy Marshall as an expert. *(Document 37)* Thereafter, on June 1, 2018, Plaintiff filed its second supplemental expert disclosures. *(Document 74)* In its designation of Timothy Marshall, Plaintiff stated:

Mr. Marshall of Haag Engineering is a licensed professional engineer in Texas. He is also a meteorologist and has a Master of Science in Civil Engineering as well as a Master of Science in Atmospheric Science. As such, Mr. Marshall is expected to testify as to the meteorological conditions both historically and at the time of the alleged damage that forms the basis of this case. Mr. Marshall may also testify as to effects and evidence of weather related events (i.e. wind and hail) and their potential to cause property damage, both in general and with respect to the property at issue and whether and to what extent any such events and damages have occurred. Mr. Marshall may further testify to wind characteristics; the lack of wind damage to Defendant's roof surfaces, roof items, etc.; wind speed damage correlation; satellite imagery studies; aerial photography studies; radar based weather data; storm intensity; hail characteristics; the directionality of hail; hail weather records; the requirements for wind/hail to damage a roof surface; and the cause and origin of any alleged hail damage to Defendant's property.

Mr. Marshall conducted a meteorological investigation for the property at issue in this case, surveyed storm data, and used his education, skill experience, and expertise as an engineer and meteorologist to form the opinions set forth in his report, a copy of which is attached hereto and incorporated by reference for all purposes. Mr. Marshall did not find wind damage on the property at issue in this case, and did not find evidence that the property experienced a wind event. Mr. Marshall may testify regarding the estimated hail size and wind gusts that occurred on the date of loss herein based on all the available data.

*(Document 74 at 5-6)* Marshall produced two reports of his opinions in this case. *(Appendix pages 87-195 and Appendix pages 196-306)* and was deposed by Freehold on April 27 and June 27, 2018. *(Appendix pages 4-58 and Appendix pages 59-86)* The

discovery period in this case ended on June 4, 2018.  *(Document 52 at 4)*  This case is set for trial on February 4, 2o19. *(Document 92)*

## ARGUMENT AND AUTHORITIES

### A.  Legal Standard

Rule 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge *will help the trier of fact* to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702 (emphasis added).  Under *Daubert*, expert testimony is admissible only if the proponent demonstrates that: (1) the expert is qualified; (2) the evidence is relevant to the suit; and (3) the evidence is reliable. *Nerium SkinCare, Inc. v. Nerium Int'l, LLC,* No. 3:16-CV-1217-B, 2018 WL 3520840, at *2 (N.D. Tex. July 3, 2018), *report and recommendation adopted in part sub nom. Nerium SkinCare, Inc. v. Nerium Int'l, LLC*, No. 3:16-CV-1217-B, 2018 WL 3496422 (N.D. Tex. July 20, 2018); *See Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988-89 (5th Cir. 1997).

In deciding whether to admit or exclude expert testimony, courts typically consider five non-exclusive factors:

1. Whether the theory or technique has been tested;

2. Whether the theory or technique has been subjected to peer review and publication;

3. The known or potential rate of error of the method used;

**Brief in Support of Amended Motion to Strike Timothy Marshall         5**

>4. The existence and maintenance of standards and controls in the methodology; and

>5. Whether the theory or method has been generally accepted by the scientific community.

*Id.; Daubert*, 113 S.Ct. at 2796-97. The purpose of such an inquiry is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Nerium,* No. 3:16-CV-1217-B, 2018 WL 3520840, at *2; *Skidmore v. Precision Printing and Packaging, Inc.*, 188 F.3d 606, 618 (5th Cir. 1999) (*quoting Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152, 119 S.Ct. 1167, 1176, 143 L.Ed.2d 238 (1999)).

The party offering the expert testimony has the burden of establishing that it is admissible under Rule 702 and the *Daubert–Kuhmo* standard. *GWTP Investments, L.P. v. SES Americom, Inc.*, No. 3:04-CV-1383-L, 2007 WL 7630459, at *3 (N.D. Tex. Aug. 3, 2007) *See Kumho,* 526 U.S. at 147; *see also Mathis v. Exxon Corp.,* 302 F.3d 448, 459–460 (5th Cir.2002).

   *1. Relevance*

To be relevant, the testimony must assist "the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702; *see also United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004)(quoting *United States v. Bourgeois*, 950 F.2d 980, 987 (5th Cir. 1992)); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993). The Federal Rules of Evidence define relevant evidence as that which "has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." FED. R. EVID. 401. In other

words, the expert testimony must be applicable to the facts in issue. *Daubert*, 509 U.S. at 592–93.

    *2. Reliability*

"Reliability hinges on the sufficiency of the facts or data upon which the opinion is based, the dependability of the principles and methods employed, and the proper application of the principles and methods to the facts of the case." *Greenspoint Inv'rs, Ltd. v. Travelers Lloyds Ins. Co.*, No. CV H-10-4057, 2015 WL 12762088, at *1–2 (S.D. Tex. Mar. 5, 2015); *See* FED. R. EVID. 702. As the Supreme Court has recognized, the *Daubert* factors "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of [the] testimony." *Kumho Tire*, 119 S.Ct. at 1175; *see also Watkins*, 121 F.3d at 988-89 ("Not every guidepost outlined in *Daubert* will necessarily apply to expert testimony[.]"). A trial court has wide latitude in deciding how to determine reliability, just as it has considerable discretion with respect to the ultimate reliability determination. *See Kumho Tire*, 119 S.Ct. at 1176.

**B. Timothy Marshall's opinion testimony is unreliable.**

Timothy Marshall was designated to testify regarding the meteorological conditions at the Property and the damage at the Property. *(Document 74)* However, Marshall did not get on the roofs of the property; did not speak to any eyewitnesses; only viewed photos taken by Plaintiff's other expert, David Teasdale; and ignored or discounted all data collected by anyone else, including the radar and weather services he consulted. Effectively, Marshall's methodology was to view the photos taken by David Teasdale, and opine that Teasdale was correct and to ignore all data, photos, or

information that disagreed with Teasdale. As a result, Timothy Marshall cannot provide any relevant testimony to help the trier of fact and should be stricken.

1. *Marshall used unreliable sources.*

The Fifth Circuit has recognized that "[t]he Daubert reliability analysis applies to, among other things, 'the facts underlying the expert's opinion.' " *Moore v. Int'l Paint, L.L.C.*, 547 Fed.Appx. 513, 515 (5th Cir. 2013) (unpublished) (quoting *Knight* 482 F.3d at 355 (internal quotation marks omitted)). "In particular, an opinion based on 'insufficient, erroneous information,' fails the reliability standard." *Id.* (quoting *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 389 (5th Cir.2009) (affirming exclusion of expert opinion that relied on false assumptions rebutted by undisputed record evidence)). And "although the *Daubert* reliability analysis is flexible and the proponent of the expert evidence need not satisfy every one of its factors, *United States v. Hicks*, 389 F.3d 514, 525 (5th Cir. 2004), 'the existence of sufficient facts ... is in all instances mandatory,' *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007)." *Id*

In forming his initial opinions, Marshall did not visit the site, did not get on the roofs, and only looked at the photos David Teasdale included in his report. *(Appendix page 8 at Deposition pages 19:14-20:22; Appendix page 10 at Deposition page 26:7-9; and Appendix pages 12-13 at Deposition pages 36:6-37:4)* He did not talk to any eyewitnesses. *(Appendix page 14 at Deposition page 44:5-9)* He did not review the results of Haag's testing and didn't even inspect the damage to the property or samples taken by his own company. *(Appendix page 23 at Deposition pages 78:11-79:15)* He did not even review the photos taken by Teasdale that were not included in the report. *(Appendix page 21 at Deposition pages 70:20-71:17)* Marshall simply reviewed Teasdale's report and pulled some weather data. *(Appendix pages 87-195)* By his own

**Brief in Support of Amended Motion to Strike Timothy Marshall          8**

testimony and reports, however, weather data should be treated as secondary to the "ground truth" of eyewitnesses. *(Appendix page 13 and Deposition pages at 37:24-38:11; Appendix pages 87-195 and Appendix pages 196-306)* He also used radar images from a radar over 150 miles away from the site that was pointed to high and prevented him from using any low level features of the radar. *(Appendix pages 87-195)*

At his first deposition, Marshall was confronted with multiple photos and news reports he had not seen before. *(Appendix pages 21-23 at Deposition pages 71:10-78:10)* At that time, he admitted that the photos showed hail larger than the size he had opined hit the Property. *(Appendix pages 21-23 at Deposition pages 71:10-78:10)* He also admitted that even though he had opined there was no wind damage to the property, a lot of the previously unseen photos "could be" wind damage. *(Appendix page 16 and Deposition at pages 49:16-50:8; Appendix pages 19-20 at Deposition pages 64:15-25; 65:6-14)* He also admitted that the only evidence that hail was less than 2 inches was from David Teasdale, and that the weather report and photos showed bigger hail. *(Appendix page 25 at Deposition page 88:2-20)*[1]

After his first deposition, Marshall then reviewed all of the photos taken by David Teasdale, and modified his opinions slightly, but still did not review any other photos or

---

[1] Also of concern regarding the reliability of Marshall, is that at his first deposition and in his curriculum vitae, Marshall claimed that he holds a Bachelor of Science in Meteorology and that his college transcript would read as such. *(Appendix pages 34-35 at Deposition pages 122:14-126:11 and Appendix pages 307-310)* Freehold's counsel pointed out that Marshall's Wikipedia page stated he had a Bachelor's degree in Geography with a focus in Meteorology. *(Appendix pages 34-35 at 122:14-126:11)* Marshall denied this and called it false. *(Appendix pages 34-35 at 122:14-126:11)*

When Freehold obtained Marshall's college transcript records, however, they clearly showed that Mr. Marshall's undergraduate degree was in Geography with a focus in Meteorology. *(Appendix pages 311-331)* If Marshall cannot be relied upon to provide an accurate statement of his educational background, he cannot be expected to provide reliable testimony to assist the jury.

testing. *(Appendix pages 63-64 at Deposition pages 6:5-7:8 and Appendix pages 196-306)* At this deposition, he also refused to call any information gathered by anyone other than Teasdale "data." *(Appendix page 78 at Deposition page 20:14-23)*

   2. *Marshall's methodology is unreliable.*

Marshall performed no real methodology other than to look at David Teasdale's photos and opine about the weather that would have caused the photos he saw.[2] *(Appendix pages 87-195 and Appendix pages 196-306)* Marshall did not base either his opinions about the size of the hail or speed of the wind on April 3, 2014 storm on any of the weather data he obtained or reviewed. *(Appendix pages 74-75 at Deposition pages 16:12-17:15; Appendix pages 75-76 at Deposition pages 17:24-18:20; and Appendix pages 78-79 at Deposition pages 20:14-21:12 and Appendix pages 87-195 and Appendix pages 196-306)*

While Marshall did make conclusions in his report regarding his own analysis of:

- Wind speed records from the Denton Municipal Airport;

- Base reflectivity and velocity radar;

- Radar based hail detection algorithms; and

- Hail records,

---

[2] Incidentally, Teasdale performed the same methodology, making Marshall's testimony cumulative and unnecessary unless Marshall can bring some other evidence or methodology to the issues of the case. "Evidence is cumulative in the Fifth Circuit when it is 'repetitious of evidence already introduced,' and may thus be properly excluded." *Matter of M&M Wireline & Offshore Services, LLC*, No. CV 15-4999, 2016 WL 4679937, at *4 (E.D. La. Sept. 7, 2016)(emphasis added); *Consol. Grain & Barge Co. v. Marcona Conveyor Corp.*, 716 F.2d 1077, 1083 (5th Cir. 1983) (citing *Meadows & Walker Drilling Co. v. Phillips Petroleum Co.*, 417 F.2d 378 (5th Cir. 1969)).

 As discussed herein, Marshall only relied upon Teasdale's data and did not perform any other analysis that he found to be accurate or reliable. As a result, he brings no independent admissible opinions to the case.

he also stated that these methods were not accurate or reliable and resulted in high false alarm rates. *(Appendix pages 87-195 and Appendix pages 196-306)* Specifically, Marshall stated that airport wind data cannot be extrapolated offsite with any accuracy, base radial velocity data from the Oklahoma airport was too high to reveal any low level winds or circulations, there are high false alarm rates in determining probability of severe hail and maximum estimated hail size at the ground level; and there is poor correlation with estimating hail size and location on the ground using hail detection algorithms. (*Appendix pages 87-195 and Appendix pages 201, 202 and 205-206)*

Marshall admittedly performed no calculations and did not opine the wind speed, hail direction, or that the hail was breaking apart based upon anything other than Teasdale's photos. *(Appendix pages 7-9 at Deposition pages 16:12-17:15; 17:24-18:20; and 20:14-21:12.)* By his own words and lack of a reliable methodology, Marshall's opinion testimony is not reliable.

WHEREFORE, PREMISES CONSIDERED, Defendants/Counter-Plaintiffs pray that this Court grant their amended motion to strike the expert testimony of Timothy Marshall; refuse to allow Timothy Marshall to provide expert testimony at trial; and award Defendants/Counter-Plaintiffs such other relief as may be proper.

    Respectfully submitted,

    *Loree & Lipscomb,*
    777 E. Sonterra Blvd., Suite 320
    San Antonio, Texas 78258
    Telephone: (210) 404-1320
    Facsimile:  (210) 404-1310

    By: */s/Todd Lipscomb*
        Robert W. Loree

State Bar No. 12579200
rob@lhllawfirm.com
Todd Lipscomb
State Bar No. 00789836
todd@lhllawfirm.com
Cassandra Pruski
State Bar No. 24983690
cassie@lhllawfirm.com

*Attorneys for Freehold Entities*

### CERTIFICATE OF SERVICE

I certify that the Freehold Entities have served a true and correct copy of the foregoing document on August 29, 2018 through the Court's electronic filing (CM/ECF) system to the following counsel of record:

Charles B. Mitchell, Jr.
Michael Shane O'Dell
Naman, Howell, Smith & Lee, PLLC
405 Forth Worth Club Building
306 West 7th Street
Fort Worth, Texas 76102-4911

Christopher D. Kratovil
Alison R. Ashmore
*DYKEMA COX SMITH*
1717 Main Street, Suite 4200
Dallas, Texas 75201
Telephone: (214) 462-6400
Facsimile: (214) 462-6401

*/s/ Todd Lipscomb*
Todd Lipscomb
