IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STATE AUTOMOBILE MUTUAL INSURANCE COMPANY, *Plaintiff* | § § § | |
| v. | § § | |
| FREEHOLD MANAGEMENT, INC. AND RETAIL PLAZAS, INC., *Defendants* | § § § § | CIVIL ACTION NO. 3:16-CV-02255-L |
| v. | § § | |
| FREEHOLD MANAGEMENT, INC., RETAIL PLAZAS, INC., AND RPI DENTON CENTER, LTD. | § § § § | |

---

**STATE AUTOMOBILE MUTUAL INSURANCE COMPANY'S AMENDED BRIEF
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

---

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

    **COMES NOW** State Automobile Mutual Insurance Company (hereinafter "State Auto") Plaintiff/Counter Defendant in the declaratory judgment action, and files this its Brief in Support of its Motion for Summary Judgment pursuant to Rule 56 of the *Federal Rules of Civil Procedure*, against Defendants/Counter Plaintiffs Freehold Management, Inc., Retail Plazas, Inc., and RPI Denton Center, Ltd. (hereinafter "Defendants" or "Freehold entities"). As set forth herein, and as established by the summary-judgment evidence submitted herewith in the Appendix,[1] State Auto is entitled to summary judgment as a matter of law, and in support of same, would respectfully show the Court the following:

---

[1] For purposes of this Motion all future citations to Exhibits in the Appendix will be labeled as "*Ex. [exhibit letter]*."

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... iii

I.   SUMMARY OF THE MOTION ................................................................................. 1

II.  BACKGROUND ......................................................................................................... 1

    A.   Policy Language ................................................................................................ 1
    B.   Investigation and Denial .................................................................................. 2

III. SUMMARY JUDGMENT STANDARD .................................................................... 6

IV.  ARGUMENTS AND AUTHORITIES ....................................................................... 7

    A.   State Auto is entitled to judgment as a matter of law on
        Defendants' breach of contract claim ............................................................ 7
    B.   State Auto had a reasonable basis for denying Defendants'
        claim and is, therefore, entitled to judgement on Defendants'
        affirmative defense of breach of duty of good faith and fair
        dealing ................................................................................................................ 9
    C.   Defendants have not overcome their burden under the
        concurrent causation doctrine, which is fatal to their recovery ................. 12
    D.   Defendants' failure to adhere to policy requirements entitles
        State Auto to summary judgment ................................................................... 15
        i.   Defendants failed to adhere to unambiguous and consistent
            policy requirements ............................................................................... 16
        ii.  Defendants' failure to submit a sworn proof of loss
            prejudiced State Auto ........................................................................... 19
    E.   The evidence affirmatively refutes at least one essential
        element of Defendants' claims of violations of Chapters 541
        and 542 of the *Texas Insurance Code* and the *Texas Deceptive
        Trade Practices Act* ......................................................................................... 22

V.   CONCLUSION ........................................................................................................... 24

# TABLE OF AUTHORITIES

**Rules**

FED. R. CIV. P. 56(a) .................................................................................6, 7

FED. R. CIV. P. 56(e)(2)............................................................................. 6, 7

**Statutes**

TEX. BUS. & COMM. CODE § 17 .................................................................. 22

TEX. INS. CODE § 541.002(2) ..................................................................... 22

TEX. INS. CODE § 542.051 .......................................................................... 22

TEX. INS. CODE § 542.056 .......................................................................... 22

TEX. INS. CODE § 542.057 .......................................................................... 22

TEX. INS. CODE § 542.060 .......................................................................... 22

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). ................................................. 6, 7

*Assicurazioni Generali, SpA v. Pipe Line Valve Specialties Co.*, 935 F. Supp. 879 (S.D. Tex. 1996) ................................................................................. 20

*Barnett v. Coppell N. Tex. Ct., Ltd.*, 123 S.W.3d 804 (Tex. App.—Dallas 2003, pet. denied)................................................................................................. 7

*Blanton v. Vesta Lloyds Ins.*, 185 S.W.3d 607 (Tex. App.—Dallas 2006, no pet.)............... 19, 20

*Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.*, No. 17-10914, 2018 U.S. App. LEXIS 15337 (5th Cir. 2018) ............................................ 14

*Cont'l Sav. Ass'n v. U.S. Fidelity & Guaranty Co.*, 762 F.2d 1239 (5th Cir. 1985) ............ ...... 17

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ........................................................ 6, 7

*Data Specialties, Inc. v. Transcontinental Ins. Co.*, 125 F.3d 909 (5th Cir. 1997). ...................... 7

*Davis v. Nat'l Lloyds Ins. Co.*, 484 S.W.3d 459 (Tex. App.—Houston [1st] 2015, pet denied)................................................................................................. 13

*Flores v. Allstate Tex. Lloyd's Co.*, 278 F. Supp. 2d 810 (S.D. Tex. 2003)................ 17, 18, 20, 21

*Garcia v. State Farm Lloyds*, 514 S.W.3d 257 (Tex. App.—San Antonio 2016, pet. denied)........................................................................................ 9, 10, 11

*Hamilton Props. v. Am. Ins. Co.*, No. CIV.A. 3:12-CV-5046-B, 2014 WL
3055801, (N.D. Tex. July 7, 2014), *aff'd*, *Hamilton Props.*, 643 F. App'x 437
(5th Cir. 2016)..................................................................................................... 17, 18, 20

*Hamilton Props. v. Am. Ins. Co.*, 643 F. App'x 437 (5th Cir. 2016).......................... 10, 13, 17, 21

*Hanover Ins. Co. of N.Y. v. Hagler*, 532 S.W.2d 136 (Tex. Civ. App.—Dallas
1975, writ ref'd n.r.e.)............................................................................................... 19

*Henry v. Mut. of Omaha Ins. Co.*, 503 F.3d 425 (5th Cir. 2007)................................. 10

*Hernandez v. Gulf Grp. Lloyds*, 875 S.W.2d 691 (Tex. 1994) .................................... 19

*Jackson v. Allstate Vehicle & Prop. Ins. Co.*, No. 4:16-CV-00988, 2017 U.S. Dist. LEXIS
164040 (E.D. Tex. Sept. 13, 2017) ........................................................................ 9

*Klein v. Century Lloyds*, 154 Tex. 160, 275 S.W.2d 95 (Tex. 1955) .......................... 17

*Lawyers Title Ins. Corp. v. Doubletree Partners, L.P.*, 739 F.3d 848 (5th Cir. 2014) .................. 9

*Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994) .......................................... 7

*Lopez v. Allstate Vehicle & Prop. Ins. Co.*, No. 4:17-CV-00103, 2017 U.S.
Dist. LEXIS 51058, 2017 WL 1294453 (E.D. Tex. Apr. 4, 2017)............................ 21

*Lyons v. Millers Cas. Ins. Co. of Tex.*, 866 S.W.2d 597 (Tex. 1993) ........................... 12

*Matador Petroleum Corp. v. St. Paul Surplus Lines Ins.*, 174 F.3d 653
(5th Cir. 1999)...................................................................................................... 16, 19

*Mid-Continent Cas. Co. v. Swift Energy Co.*, 206 F.3d 487 (5th Cir. 2000) ................................ 15

*National Union Fire Ins. v. Bourn*, 441 S.W.2d 592 (Tex. Civ. App.—Fort Worth
1969, writ ref'd, n.r.e.)............................................................................................. 17

*Nunn v. State Farm Mut. Auto. Ins. Co.*, 729 F. Supp. 2d 801 (N.D. Tex. 2010)......................... 10

*PAJ, Inc. v. Hanover Ins.*, 243 S.W.3d 630 (Tex. 2008) ............................................ 16, 19

*Pamphile v. Allstate Tex. Lloyds*, No. 3:17-CV-0832-B, 2017 U.S. Dist. LEXIS
164976 (N.D. Tex. Oct. 4, 2017) ........................................................................... 20, 21

*Polen v. Allstate Vehicle & Prop. Ins. Co.*, No. 4:16-CV-842, 2017 U.S. Dist.
LEXIS 22619, 2017 WL 661836 (E.D. Tex. Feb. 17, 2017)...................................... 21

*Provident Am. Ins. v. Castañeda*, 988 S.W.2d 189 (Tex. 1998)................................... 9

*Ridglea Estate Condo. Ass'n v. Lexington Ins. Co.*, 415 F.3d 474 (5th Cir. 2005) .......... 16, 17, 18

*Rogers v. Allstate Vehicle & Prop. Ins. Co.*, No. 3:17-CV-0455-M, 2017 U.S. Dist.
LEXIS 118588, 2017 WL 3215292 (N.D. Tex. July 28, 2017)..................................... 21

*Spicewood Summit Office Condos. Ass'n, Inc. v. Am. First Lloyd's Ins. Co.*,
287 S.W.3d 461 (Tex. App.—Austin 2009, pet. denied) ............................................ 9

*State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42 (Tex. 1998)........................... 9

*Stonewall Ins. Co. v. Modern Exploration Inc.*, 757 S.W.2d 432 (Tex. App.—Dallas
1988, no writ)................................................................................................................ 17

*Tellez v. Encompass Ins. Co. of Am.*, No. 5:02-CV-214, 2004 U.S. Dist. LEXIS
32406, 2004 WL 742912 (E.D. Tex. Jan. 27, 2004) ............................................. 20, 21

*Trumble Steel Erectors, Inc. v. Moss*, 304 F. App'x 236 (5th Cir. 2008).............. 17, 20

*Wallis v. United Servs. Auto. Ass'n*, 2 S.W.3d 300
(Tex. App.—San Antonio 1999, pet. denied) .................................................... 12, 14

*Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 801 F.3d 512
(5th Cir. 2015).............................................................................................................. 10

*Wells v. Minn. Life Ins. Co.*, 885 F.3d 885 (5th Cir. 2018) ...................................... 8

*Wilson v. Allstate Ins. Co.*, No. 4:16-CV-970, 2017 U.S. Dist. LEXIS 54239,
2017 WL 1313854 (E.D. Tex. Apr. 10, 2017)........................................................... 21

*Union Bankers Ins. v. Shelton*, 889 S.W.2d 278 (Tex. 1994)...................................... 9

# I.
## SUMMARY OF THE MOTION

At issue in this Motion is the scope of State Auto's liability for alleged property damage to Defendants' property in Denton, Texas, caused by a storm that struck the property on April 3, 2014. Specifically, this Motion seeks summary judgment on Defendants' counterclaims for breach of contract, breach of the duty and good faith and fair dealing, violations of Chapters 541 and 542 of the *Texas Insurance Code*, and violation of the *Texas Deceptive Trade Practices Act* ("DTPA"). This Motion further seeks summary judgment on Defendants' alleged damages due to their failure and inability to segregate covered/excluded damages pursuant to the concurrent causation doctrine and because State Auto was prejudiced by Defendants' failure to abide by the prompt notice and sworn proof of loss provisions of the policy.

# II.
## BACKGROUND

This case arises from an insurance coverage dispute pursuant to a commercial property insurance policy issued by State Auto to Defendants. State Auto provided insurance policy PBP 2603242 02, to Defendants with a policy period of September 30, 2013 to September 30, 2014 ("the policy"). [Doc. 1 at 2]. On April 3, 2014, a hail storm ("the storm") passed through the Denton area. [*Id.*]. Subsequently, Defendants filed a property damage claim ("the claim") on the policy for alleged storm damage to their shopping center located at 500-1900 West University, Denton, Texas 76201 (the "Property"). [*Id.* at 3].

### A. Policy Language

The relevant provisions of State Auto's policy pertaining to coverage and the duties of the insured in the event of a loss are set forth in Plaintiff's Original Petition and are hereby incorporated as if fully set forth herein. [Doc. 1 at 4–7]. As far as coverage is concerned, the

policy specifically excludes damage caused by wear and tear, rust or other corrosion, continuous leakage of water, and neglect of an insured to use reasonable means to save and preserve the property from future damage, among others. [*Id.* at 5–6]. The policy also provides that if an excluded cause of loss—such as weather conditions—results in a covered cause of loss, State Auto will pay for the damage caused by the covered cause of loss. [*Id.* at 6]. In the event of loss or damage to covered property, the policy requires the insured to promptly notify State Auto of the alleged damage and provide same with a signed, sworn proof of loss within the requisite time period. [*Id.* at 7]; *Ex. A, p.6.*

## B. Investigation and Denial

On April 7, 2014, four days after the storm, Paul Douglas ("Douglas"), a State Auto employee; Carolyn Coleman ("Coleman"), one of Defendants' experts and a general contractor with Tice Enterprises; and subcontractor Tom Blankenship ("Blankenship") met for an initial inspection of the Property, which took approximately three to four days. *Ex. B, p.11* at 34:22–:24. Two days later, on April 9, 2014, State Auto sent David Teasdale ("Teasdale") of Haag Engineering ("Haag") to inspect the Property with Coleman. *Ex. C, p.17* at 2. Teasdale inspected the Property again on April 15, 2014. *Id.* During these visits, Teasdale took 468 photographs and 19 samples from each of the 9 buildings with asphalt built-up roofs ("ABUR") at the Property: Kroger, Day's Hardware, Drug Emporium, Denton Athletics, Tavern Theater, 0.99 Store, Little Caesars, Baja Auto Insurance, and Firestone.[2] *Id.* at 3. While waiting for the results of Teasdale's findings, State Auto provided Defendants with a sworn proof of loss ("SPOL") form on April 17, 2014, pursuant to the policy provisions. *Ex. D, p.490-495.* Teasdale issued his initial report on June 10, 2014, detailing his findings and concluding that

---

[2] Notably, Teasdale inspected all 12 buildings on the property; however, the samples taken were limited to the 9 built-up asphalt roofs given that these roof membranes were the most hail resistant roofing membranes on the Property. *Ex. C, p.18-19* at 3, 4.

aside from one fractured top ply at an exposed blister,[3] none of the ABURs exhibited evidence of hail or wind damage. ***Ex. C, p.22; 24*** at 6, 8, Attachment C, p. 18-19 at 3–4.

On July 14, 2014, based on the information then available, State Auto sent Defendants a partial denial letter, noting that some of the losses were not covered under the policy and referring Defendants to Teasdale's report. ***Ex. E, p. 497-502.*** Specifically, the letter provided:

> Our investigation has determined that there may some interior leaking in some of the buildings that may or may not be covered under this policy. The cause of that leaking is still under investigation.
>
> Our investigation has determined that some of the damages to the roof structures are not covered under the aforementioned policy.
>
> As you are aware, we hired an engineer to inspect the properties to determine the cause of the damage, if any. A copy of his report has previously been provided to you.

*Id.* at 1.   In addition, the letter explicitly requested information from Defendants for those portions of the claim that State Auto was continuing to investigate. *Id.* at 5.   In order to properly evaluate Defendants' claim, State Auto requested that Defendants provide "A signed, sworn proof of loss and the documentation to substantiate that proof.  The proof of loss was previously forwarded to you and needs to be returned to us by July 17, 2014 (91 days from the date of our request), per the policy." *Id.*

On January 20, 2015 Defendants submitted their initial estimate, estimating the damage to the property at $1,055,720.08. ***Ex. F, p.504-508.***  The parties met on May 19, 2015, to discuss the initial damage estimate and the cost of the repairs to the Property. [Doc. 1 at 3].   At this meeting, the parties reached an agreement that the cost of repairs to the Property amounted to $1,260,707.54 with an actual cash value of $1,065,861.32.  [*Id.*].  Defendants accepted payment from State Auto pursuant to this agreement but now deny that the parties reached any agreement.

---

[3] Blisters result from trapped moisture, solvents, or air in voids between roof plies.

[Doc. 6 at 2]. It is uncontested that State Auto paid Defendants $1,036,397.17 to cover the storm damage and depreciation to the Property. [*Id.*]. Defendants used the settlement funds to replace some flashings on the Property and to replace the roof membranes on two of the ten buildings that in the Property. *Ex. G, p. 513* at 68.

On June 29, 2015, following numerous requests from State Auto for a completed copy of the SPOL, Defendants finally submitted the SPOL estimating both hail and wind damage amounted to an additional $828,096.30 of damage under the policy. *Ex. H, p. 517-521.* Notably, this was the first time State Auto was made aware of Defendants' wind damage claim. Defendants' SPOL specifically excluded "code upgrades, paint damage, Kroger roof damage." *Id.* Notably, Defendants' SPOL did not reflect, their expert's January 20, 2015, damage estimate totaling $1,055,720.08. *Ex. F, p. 504-508.* Furthermore, the SPOL did not exclude the other ABURs. *Ex. H, p. 517-521.*

On March 11, 2016, almost two years after the storm, Defendants hired Matt Phelps ("Phelps"), an engineer from APEC, LLC, to conduct an independent inspection. [Doc. 16-1 at 7]. Phelps' initially visited the Property on March 22, 2016. *Ex. I, p. 524 at 2.* On March 31, 2016, Phelps issued his report alleging that the roof over the Kroger portion of the Property was damaged as a result of hail and high winds generated by the storm. *Id.* Importantly, Phelps' March 31 report pertained solely to the Kroger roof, stating "This report pertains to the roof directly above the Kroger Grocery Store. My opinion does not reflect the status or condition of the other roofs of the building." *Id.*

One month after the hiring of Matt Phelps and two years after the 2014 storm, Tice Enterprises submitted a supplemental estimate on April 13, 2016, increasing their estimated damages from $828,096.30 to an astounding $8,649,051.06. *Ex. J, p. 745-749.*

On June 20, 2016, counsel for Defendants sent a DTPA demand to State Auto pertaining solely to State Auto's failure to pay for the alleged damage to the Kroger roof. *Ex. K, p. 751-755.* The demand letter also noted that Defendants were in the process of testing the other roofs on the Property to determine if there was any additional damage State Auto failed to pay for. *Id.* at 3.

On April 13, 2017, Phelps inspected the Property a second time and on June 26, 2017, Phelps issued his second report, this time assessing the damage to six roofs on the Property, and concluding that all six roofs needed to be replaced as a result of hail and wind damage from the April 2014 storm. *Ex. L, p. 757-1036.* Importantly, this was the first mention damage to the other ABURs had been raised. Timothy Marshall ("Marshall") of Haag Engineering reviewed Phelps' 2017 findings and issued his report, Haag's second report, on August 28, 2017, providing a detailed account of the wind and hail reported from the April 2014 storm as well as the hail and wind history of the Property in general. *Ex. M, p. 1038-1161.* Marshall confirmed Teasdale's findings that there was no evidence of hail or wind damage as a result of the April 3, 2014 storm and concluded that the Property had undergone other hail and wind events outside the Policy period. *Id.* at 13. He further opined that Phelps' report was flawed due to a failure to account for weather differences between the Denton Airport, where Phelps' data was derived, and the Property at issue in this case, and that based on the April 3, 2014 weather reports, the closest hail reported to the Property was two inches in diameter—not large enough to cause the damages claimed. *Id.*

Most recently, on February 19, 2018, nearly four years after the storm and one and one-half years after the instant lawsuit was filed, Defendants again supplemented their damage

estimate, doubling their previous estimate and opining that the current property damage amounts to $16,203,766.10. *Ex. N, p. 1163-1177.*

Defendants contend that State Auto did not pay for the hail and wind damage to the Kroger roof and the remaining ABURs arising from the 2014 storm. [Doc. 6 at 2]. Moreover, despite the estimates Defendants previously provided and their SPOL, they currently contend that the Property damage from the 2014 storm is at least eight times the amount of their original estimate. *Ex. O, p. 1181-1182 at* 201:12–:21; 208:22–:25. State Auto firmly contends that Defendants' additional damage claims are not covered under the terms of the policy. The parties were unable to resolve the coverage disputes arising from the 2014 storm and, therefore, State Auto filed a declaratory judgment action, Cause No. 3:16-CV-02255-L, on August 3, 2016, in an attempt to finally resolve the parties' disagreements. [Doc. 1].

### III.
### SUMMARY JUDGMENT STANDARD

Summary judgment is proper pursuant to Rule 56 of the *Federal Rules of Civil Procedure* "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The initial burden to demonstrate the absence of a genuine issue of material fact is on the movant. *Id.* at 324. This can be done by the movant showing that there is an absence of evidence to support an essential element of the non-movant's case. *Id.* The burden then shifts to the non-movant to establish that there is a genuine issue of material fact in dispute. *Id.*; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49 (1986).

The opposing party must go beyond the pleadings and by its own affidavits or by the depositions, answers to interrogatories, or admissions on file set forth specific facts showing that

there is a genuine issue for trial. *See* FED. R. CIV. P. 56(e)(2). This burden is not satisfied by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *See Anderson*, 477 U.S. at 249–50; *see also* FED. R. CIV. P. 56(e)(2). If the non-movant cannot produce evidence to create a genuine issue of material fact, summary judgment in favor of the movant is appropriate. *Celotex*, 477 U.S. at 324; *Liberty Lobby, Inc.*, 477 U.S. at 248–49.

## IV.
### ARGUMENTS AND AUTHORITIES

Pursuant to *Federal Rule of Civil Procedure* 56(a) State Auto would show that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. The evidence affirmatively refutes at least one essential element of each of Defendants' counterclaims for breach of contract, breach of the duty of good faith and fair dealing, violations of the DTPA, and violations of the *Texas Insurance Code* and, therefore, State Auto is entitled to summary judgment as a matter of law.

### A. State Auto is entitled to judgment as a matter of law on Defendants' breach of contract claim.

The elements of a breach of contract claim are (1) the existence of a valid contract between the plaintiff and defendant, (2) the plaintiff performed, (3) the defendant breached the contract, and (4) the plaintiff was damaged as a result of the breach. *Barnett v. Coppell N. Tex. Ct., Ltd.*, 123 S.W.3d 804, 815 (Tex. App.—Dallas 2003, pet. denied). "[F]or an insurance company to be liable for a breach of its duty to satisfy a claim presented by its insured, the insured must prove that its claim falls within the insuring agreement of the policy." *Data Specialties, Inc. v. Transcontinental Ins. Co.*, 125 F.3d 909, 911 (5th Cir. 1997). It is the

insured's burden to establish that the claim is covered by the policy. *Wells v. Minn. Life Ins. Co.*, 885 F.3d 885, 890 (5th Cir. 2018). According to Defendants, State Auto did not comply with the provisions of the policy that required it to timely investigate Defendants' windstorm claim and to pay benefits covered under the Policy for the alleged wind and hail damage. [Doc. 6 at 8–9]. However, the evidence herein produced shows that contrary to Defendants' allegations, State Auto timely investigated the claim—which has changed and evolved significantly since the date of the 2014 storm and the filing of this lawsuit—and paid for those damages covered under the policy.

Within days of the storm, State Auto sent Douglas and Teasdale to meet with Coleman and Blankenship to examine the Property for wind and hail damage. *Ex. B, p. 11* at 34:22–:24; *Ex. C, p. 17* at 2. Teasdale conducted a thorough investigation of all the roofs on the property and his findings revealed that there was some hail damage,[4] but there was no hail damage to the ABURs and no evidence of wind damage. *Ex. C, p. 18-19, 22* at 3-4, 6. Based on this information, State Auto sent Defendants a partial denial letter on July 14, 2014, for those portions of Defendants' claim that were not covered under the policy and specifically listing what information was needed from Defendants in order to properly evaluate the portions of the claim that State Auto was continuing to investigate. *Ex. E, p. 497-502.* In compliance with its obligation to pay policy proceeds resulting from covered losses, State Auto paid Defendants $1,036,397.17, which is undisputed between the parties. [Doc. 6 at 2].

Accordingly, the evidence illustrating that Defendants were paid for the covered losses and that State Auto timely investigated Defendants' claim affirmatively refutes an essential element of Defendants' breach of contract claim and State Auto is entitled to summary judgment on this claim.

---

[4] The damage observed was to some of the other, non-ABURs. *Appendix Ex. C, p. 14-488.*

**B. State Auto had a reasonable basis for denying Defendants' claim and is, therefore, entitled to judgement on Defendants' affirmative defense of breach of duty of good faith and fair dealing.**

Defendants allege State Auto breached the duty of good faith and fair dealing by denying their claim without any reasonable basis and by failing to conduct a reasonable investigation to determine if there was a reasonable basis for its denial. [Doc. 6 at 12–13]. To prove that State Auto breached the duty of good faith and fair dealing, Defendants must establish that (1) there was an insurance contract between the parties that created a duty of good faith and fair dealing; (2) the insurer breached its duty when it denied or delayed payment when liability was reasonably clear or cancelled an insurance policy without a reasonable basis; and (3) the insurer's breach proximately caused the insured's damages. *Provident Am. Ins. v. Castañeda*, 988 S.W.2d 189, 193 n.13 (Tex. 1998); *Union Bankers Ins. v. Shelton*, 889 S.W.2d 278, 283 (Tex. 1994).

Courts have routinely required the insured to prove: (1) that the insurer either denied or delayed payment of the claim; and (2) that the insurer 'knew or should have known that it was reasonably clear that the claim was covered'" in order to succeed on a claim of breach of the duty of good faith and fair dealing. *Jackson v. Allstate Vehicle & Prop. Ins. Co.*, No. 4:16-CV-00988, 2017 U.S. Dist. LEXIS 164040, at *9 (E.D. Tex. Sept. 13, 2017) (citing *Lawyers Title Ins. Corp. v. Doubletree Partners, L.P.*, 739 F.3d 848, 869 (5th Cir. 2014); *Spicewood Summit Office Condos. Ass'n, Inc. v. Am. First Lloyd's Ins. Co.*, 287 S.W.3d 461, 468 (Tex. App.— Austin 2009, pet. denied)). "Evidence that merely shows a bona fide dispute about the insurer's liability on the contract does not rise to the level of bad faith." *Garcia v. State Farm Lloyds*, 514 S.W.3d 257 (Tex. App.—San Antonio 2016, pet. denied) (citing *State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44 (Tex. 1998)). The court in *Garcia* went on to explain:

> Nor is bad faith established if the evidence shows the insurer was merely incorrect about the factual basis for its denial of the claim, or about the proper construction of the policy. A simple disagreement among experts about whether the cause of the loss is one covered by the policy will not support a judgment for bad faith. An insured claiming bad faith must prove that the insurer had no reasonable basis for denying or delaying payment of the claim, and that it knew or should have known that fact.

*Garcia*, 514 S.W.3d at 276–77 (internal citations omitted). "Courts should be careful to ensure that the bad faith action is reserved for cases of flagrant denial or delay of payment where no reasonable basis existed, and not for mere unreasonable denial or delay." *Nunn v. State Farm Mut. Auto. Ins. Co.*, 729 F. Supp. 2d 801, 807 (N.D. Tex. 2010) (internal quotation omitted). The primary inquiry in bad faith claims is the reasonableness of the insurer's conduct. *Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 801 F.3d 512, 526 (5th Cir. 2015); *Henry v. Mut. of Omaha Ins. Co.*, 503 F.3d 425, 428–29 (5th Cir. 2007).

"In general, an insured does not have a bad faith claim in the absence of a breach of contract by the insurer." *Hamilton Props. v. Am. Ins. Co.*, 643 F. App'x 437, 442 (5th Cir. 2016) (internal citations and quotations omitted). The only recognized exception to this rule is "when the insurer commits an act, so extreme, that would cause injury independent of the policy claim or failed to timely investigate its insureds' claims." *Id.* (internal citations and quotations omitted). As Defendants have not and cannot establish that State Auto breached the contract, Defendants must show that State Auto failed to timely investigate the claim or committed an act so extreme that caused Defendants an injury independent of the policy claim. To date, Defendants have not alleged any injury independent of the claim, and the evidence does not support any allegation that State Auto did not timely investigate this matter as was fully set forth in Part IV.A, *supra*.

Alternatively, even if the Court finds that Defendants have produced enough evidence to support a breach of contract claim, Defendants cannot establish that State Auto acted in bad faith. During the initial inspections of the property, Douglas and Teasdale examined all the Property roofs for both hail and wind damage and concluded there was no hail or wind damage to the ABURs. *Ex. C, p. 22, 24* at 6, 8, *Ex. C*, p. 18-19 at 3–4. Any disagreement would constitute a disagreement among the parties' experts, which is not sufficient to establish a bad faith claim. State Auto did not breach its duty of good faith or fair dealing given that it had a reasonable basis for denying or delaying payment of Defendants' ever-changing claim. *See Garcia*, 514 S.W.3d at 276–77 ("An insured claiming bad faith must prove that the insurer had no reasonable basis for denying or delaying payment of the claim, and that it knew or should have known that fact.").

Defendants' continuous revision to their damage estimate also supports that State Auto did not breach its duty. Defendants failed to submit a SPOL for almost nine months, waited over one year to send an engineer to inspect the Property, and continued increasing their damage estimate nearly four years after the subject storm. Since the April 3, 2014 event, Defendants have amended their damage estimate at least three different times; their most recent estimate dated February, 19, 2018, is eight times higher than their original estimate. *Ex. O, p. 1181-1182* at 201:12–21; 208:22–:25. Two of these increased estimates came soon after Phelps issued his reports—the first report only pertained to the Kroger roof while the second, over one year later, opined on damage to six other roofs. *Exs. I, p. 523-743, L, p. 757-1036.* Defendants' revised estimates illustrate that they themselves have been unable to determine the extent of their damages.

Additionally, the case law is clear that a bona fide dispute as to liability or coverage is not enough to support a party's claim for bad faith. *Garcia v. State Farm Lloyds*, 514 S.W.3d 257, 276–77 (Tex. App.—San Antonio 2016, pet. denied). As is explained in further detail below, in Part IV.C., State Auto reasonably denied Defendants' claim as many of the damages claimed are not covered under the policy—some damages were specifically excluded under the policy while others fell outside of the policy period.

A third reason Defendants' argument fails is that even their bad faith expert refuted evidence of bias in this case. Defendants hired Roger Grimm to support their bad faith allegations against State Auto. *Ex. P, p. 1188-1191*. Notably, however, Grimm was only retained to testify to the alleged bias of State Auto's hiring of Haag Engineering. *Id.* During Grimm's deposition, he conceded that there is no evidence of bias by Haag Engineering in this case. *Ex. Q, p. 1198* at 61:23–25. Rather, he opined that in 1997 the Texas Supreme Court found Haag biased in *Nicolau v. State Farm Lloyds*, 951 S.W.2d 444 (Tex. 1997) and because Haag has been proven to be biased in the past, there is a possibility that they may have been biased in the instant case. *Id.* Grimm's opinions were based exclusively on prior court holdings and were not based on any case-specific information. For these reasons, State Auto is entitled to summary judgment as a matter of law.

## C. Defendants have not overcome their burden under the concurrent causation doctrine, which is fatal to their recovery.

It has long been recognized in Texas that an insurer is only liable for losses covered by the policy. *Wallis v. United Servs. Auto. Ass'n*, 2 S.W.3d 300, 303 (Tex. App.—San Antonio 1999, pet. denied). The doctrine of concurrent causation provides that where "covered and non-covered perils combine to create a loss, the insured is entitled to recover only that portion of the damage caused solely by the covered peril(s)." *Id.* at 302–03; *see also Lyons v. Millers Cas. Ins.*

*Co. of Tex.*, 866 S.W.2d 597, 601 (Tex. 1993) (stating that in such situations, "the insured must present some evidence affording the jury a reasonable basis on which to allocate the damage."). The insured "bears the burden to segregate the damage attributable solely to the covered event, and the failure to meet this burden is fatal to recovery." *Davis v. Nat'l Lloyds Ins. Co.*, 484 S.W.3d 459, 471 (Tex. App.—Houston [1st] 2015, pet denied); *see also Hamilton Props. v. Am. Ins. Co.*, 643 F. App'x 437, 442 (5th Cir. 2016) (ruling in favor of insurer where insured could only produce enough evidence of damage "*linked*" to the particular hail storm, and no evidence "to enable a jury to segregate damages for only that property damage caused by covered perils that occurred within the policy period.").

To date, Defendants have failed to put forth any evidence segregating the alleged damages caused by the April 2014 storm. Defendants' most recent estimate of $16,203,766.10 fails to account for damage incurred outside of the policy period and does not factor in depreciation or other perils that are not covered by the policy. *Ex. N, p. 1163-1177.* Furthermore, Defendants' damage estimates are based on their inspections of the Property, the first of which did not take place until nearly two years after this storm. *Ex. I, p. 524* at 2. Conversely, State Auto's experts conducted multiple inspections—the first of which took place just days after the storm—and performed an analysis of other wind and hail events at the subject property to determine whether the alleged damage to the roofs resulted from this storm. *Ex. C, p. 15-488.* Marshall also concluded that there have been a number of other high wind and hail events at the Property that may have damaged the roofs. *Ex. M, p. 1038-1161.*

The burden is on Defendants, the insureds, to prove that the damages sought are covered by the policy. Notably, Coleman testified during her deposition that following her initial inspection, she concluded that there was not enough evidence of hail damage to the Kroger roof

to include it in her estimate, which supports the findings of State Auto's experts. *Ex. O, p. 1182 at 207:23–208:19.* This is in direct conflict with what Defendants are now claiming, which illustrates that there may have been damage to the roof that occurred outside the policy period. In fact, there is ample evidence adduced by State Auto's experts to support concurrent causation and it is Defendants burden to segregate the damage attributable solely to the covered event.

The fact that this storm may have caused part of Defendants' estimated damages is not enough. In *Wallis v. United Services Automobile Association,* the insured had provided enough evidence to convince the jury that a covered loss had contributed to a portion of the complained-of damage. 2 S.W.3d at 303–04. However, the insured's experts were unable to indicate the extent to which the covered peril damaged the insured's residence. *Id.* at 304. Accordingly, the court held that this failure was fatal to the insured's claim, reasoning that:

> Although a plaintiff is not required to establish the amount of his damages with mathematical precision, there must be some reasonable basis upon which the jury's finding rests. . . . The jury heard no testimony regarding how much of the [insured's] damage was caused by the plumbing leaks. It learned only that plumbing leaks were found.

*Id.*

The facts of the instant case are similar to those in *Certain Underwriters at Lloyds of London v. Lowen Valley View, L.L.C.,* No. 17-10914 (filed June 6, 2018), which also involved a hail claim on a commercial insurance policy. Following several inspections and reports received from Haag Engineering, the insurer denied the claim and filed suit the same day seeking a declaratory judgment that it did not owe its insured coverage for the hail claim. The court for the Northern District of Texas granted the insurer's motion for summary judgment on the grounds that the insured failed to satisfy its burden of offering evidence that would allow the trier of fact to segregate the damages between covered and non-covered losses. On appeal, the Fifth Circuit

Court of Appeals affirmed the district court's holding.  The Court relied on Haag's report, "conclud[ing] that it is unlikely that hail only fell at this location one time.  Rather, there have been multiple hail events at this location."  Some of those events occurred outside the policy period.  Accordingly, the Court's opinion explained that the summary judgment evidence showed there were several hail storms that struck the property over the course of several years and "the record lacked reliable evidence permitting a jury to determine which of these storms— alone or in combination—damaged the [property]."

The same is true here.  As illustrated above, State Auto's experts opined that there were a number of storms that impacted the Denton property from 1995 to 2014 and that April 3, 2014 was not the first-time large hail and high winds have been reported in or around the Property. *Ex. M, p. 1038-1161.*  In contrast, Defendants have only produced evidence *alleging* that the ABURs at the Property sustained hail and wind damage as a result of the April 3, 2014 storm, yet Defendants have failed to provide any evidence, estimate, or damage model that would permit a jury to determine which losses were covered or excluded.  Defendants have not explained or attempted to explain how the data and/or estimated damages support their position that the Property was damaged on April 3, 2014 and not during a prior hail/wind event.  Accordingly, Defendants have failed to satisfy their burden and, thus, are not entitled to the damages sought.

### D. Defendants' failure to adhere to policy requirements entitles State Auto to summary judgment.

"In Texas, insurance policies are contracts subject to the rules of contract construction." *Certain Underwriters*, 2018 U.S. App. LEXIS 15337 (citing *Mid-Continent Cas. Co. v. Swift Energy Co.*, 206 F.3d 487, 491 (5th Cir. 2000)). "[W]hen an insurance policy is ambiguous or inconsistent, the construction that would afford coverage to the insured must govern." *Id.*

Moreover, "[c]onditions are not favored in the law," and courts have traditionally distinguished between two types of insurance policies: "occurrence" policies and "claims-made" policies. *See PAJ, Inc. v. Hanover Ins.*, 243 S.W.3d 630, 636 (Tex. 2008); *Matador Petrol. Corp. v. St. Paul Surplus Lines Ins. Co.*, 174 F.3d 653, 658 (5th Cir.1999). "An 'occurrence' policy covers the insured for acts or omissions that occur within the policy, regardless of whether the claim is brought to the attention of the insured or made known to the insurer during the policy period." *Matador Petrol. Corp.*, 174 F.3d at 658 n. 2 (internal quotation marks and alterations omitted). Here, the policy at issue is an "occurrence" policy. *Ex. A, p. 5-7.* Furthermore, Texas law does not consider a "prompt notice" provision an essential part of the bargained-for exchange. *PAJ, Inc.*, 243 S.W.3d at 636. Consequently, "any notice requirement is subsidiary to the event that triggers coverage." *Matador Petrol. Corp.*, 174 F.3d at 658.

Accordingly, "Texas law requires a showing of prejudice in order to raise breach of a notice requirement as a defense." *Ridglea Estate Condo. Ass'n v. Lexington Ins. Co.*, 415 F.3d 474, 479 (5th Cir. 2005); *see also PAJ, Inc.*, 243 S.W.3d at 635–36 (the court explaining that it is moot whether a policy requirement is a condition precedent or covenant because the insurer must show prejudice based on the insured's failures to deny coverage or cite those failures as a defense). Thus, to determine if State Auto is entitled to summary judgment on Defendants' policy requirement failures, it must show that Defendants' failures resulted in prejudice.

### i. Defendants failed to adhere to unambiguous and consistent policy requirements.

The policy's language clearly required Defendants to give State Auto "prompt notice" of a loss or damage. Specifically, the policy, in its relevant parts, clearly requires Defendants to (1) give prompt notice of a loss or damage; (2) submit a SPOL within ninety-one (91) days of State Auto's request; (3) take steps to protect the covered property from further damage and document

expenses related to any mitigation actions; and (4) cooperate with State Auto to investigate the insured's claim. [Doc. 1 at 7]; *Ex. A, p. 5-7.*

Texas state and federal courts determine the threshold of "prompt notice" by applying a reasonableness standard. *Flores v. Allstate Tex. Lloyd's Co.*, 278 F. Supp. 2d 810, 815 (S.D. Tex. 2003) (citing *Nat'l Union Fire Ins. v. Bourn*, 441 S.W.2d, 592, 595 (Tex. Civ. App.—Fort Worth 1969, writ ref'd, n.r.e.)). If the policy does not define prompt notice, as is the case here, then Texas courts "construe [such phrases] as meaning that notice must be given *within a reasonable time* after the occurrence." *Ridglea Estate Condo*, 415 F.3d at 479 (quoting *Stonewall Ins. Co. v. Modern Exploration Inc.*, 757 S.W.2d 432, 435 (Tex. App.— Dallas 1988, no writ), and adding emphasis); *see also Cont'l Sav. Ass'n v. U.S. Fidelity & Guar. Co.*, 762 F.2d 1239, 1243 (5th Cir. 1985). "What constitutes a reasonable amount of time depends on the facts and circumstances in each particular case." *Stonewall*, 757 S.W.2d at 435. "While generally a question of fact, reasonableness becomes a question of law if the facts are undisputed." *Cont'l Sav. Ass'n*, 762 F.2d at 1243; *see also Klein v. Century Lloyds*, 275 S.W.2d 95, 97 (Tex. 1955).

In *Hamilton Properties v. American Insurance Company*, this Court explained that an eight-month delay in notice "compromised the reliability and availability of evidence necessary to investigate their claim," and concluded "that [the insurer] suffered an adverse change in position as a result of [insured's] delay." No. CIV.A. 3:12-CV-5046-B, 2014 WL 3055801, at *10 (N.D. Tex. July 7, 2014), *aff'd, Hamilton Props.*, 643 F. App'x 437 (5th Cir. 2016) (citing *Trumble Steel Erectors, Inc. v. Moss*, 304 F. App'x 236 (5th Cir. 2008)).

Here, Defendants' notice of alleged additional damage—two-years after the 2014 storm at the Property—far exceeds the eight-month delay that this Court found unreasonable and

prejudicial in *Hamilton Props.* No. CIV.A. 3:12-CV-5046-B, 2014 WL 3055801, at *10; *Exs. J, p. 745-749, N, p. 1163-1177.* Considering Defendants' portrayal of the storm, Defendants were on notice on April 3, 2014, that the Property may have sustained storm damage. *Ex G, p. 510* at 21:25; 22:1-4; *Ex. R, p. 1207* at 23:11-25, 24:1-12; *Ex. S, p. 1213* at 7:5-25; *see Ridglea Estate Condo.*, 415 F.3d at 477. Defendants also had ample time to fully inspect the Property for storm damage immediately after the storm.

However, Defendants finally submitted a SPOL in 2015 that specifically excluded the Kroger Roof, in spite of their expert's estimate, and the ABURs at the Property which they now contend were damaged by the 2014 storm. *Exs. D, p. 490-495, F, p. 504-508, H, p. 517-521, J, p. 745-749, N, p. 1163-1177.* This SPOL was also the first time wind damage was raised as a potential issue. *See* Part II.B, *supra.* Defendants' vacillating damage claims arising from a storm that occurred over four (4) years ago have substantially inhibited State Auto's ability to conduct an informed investigation of Defendants' damage claims and are significantly outside the scope of reasonable notice set forth in *Flores* and *Hamilton. Flores*, 278 F. Supp. 2d at 815; *Hamilton Props.*, No. CIV.A. 3:12-CV-5046-B, 2014 WL 3055801, at *10. Ironically, Defendants' inability to settle on a damage estimate is one of the clearest indications that Defendants' unreasonably delayed notice and the passage of time compromised the investigation of their claims. *Exs. F, p. 504-508, H, p. 517-521, J, p. 745-749, N, p. 1163-1177, T, p. 1220* at 31:17-25; 32:1-4; 32:19-25; 33:1-3; *U, p. 1229* at 92:13-25; 93:1-11. Accordingly, Defendants' failure to adhere to unambiguous and consistent policy terms has materially compromised State Auto's ability to investigate the alleged damage at the Property.

### ii. Defendants' failure to submit a sworn proof of loss prejudiced State Auto.

Courts in Texas typically do not permit an insurer to deny coverage solely on the basis of failure to adhere to a policy requirement unless the insurer shows that is suffered "actual prejudice from the delay." *Matador*, 174 F.3d at 658.   The Texas Supreme Court adopted a broad notice-prejudice rule because "conditions are not favored in the law" and "timely notice provision[s] [are] not an essential part of the bargained-for-exchange."   *See PAJ, Inc.*, 243 S.W.3d at 636.   Pursuant to Texas' broad notice-prejudice rule, State Auto must show that it was prejudiced by Defendants' failure to comply with a policy requirement in spite of whether it is a covenant, condition precedent, exclusion, or provision. *E.g.*, *id.* at 635.

"A showing of prejudice generally requires a showing that one of the recognized purposes has been impaired." *Blanton v. Vesta Lloyds Ins.*, 185 S.W.3d 607, 615 (Tex. App.— Dallas 2006, no pet.).   In *Hernandez v. Gulf Group Lloyds*, the court explained that: "[i]n determining the materiality of a breach, courts will consider, among other things, the extent to which the nonbreaching [sic] party will be deprived of the benefit that it could have reasonably anticipated from full performance.   The less the non-breaching party is deprived of the expected benefit, the less material the breach." 875 S.W.2d 691, 693 (Tex. 1994) (citations omitted).

Thus, if State Auto demonstrates that it was prejudiced by Defendants' failure to comply with the policy's SPOL requirements, then Defendants are bound to the policy's requirements and the consequences of failing to comply, i.e., denial of coverage. *PAJ, Inc.*, 243 S.W.3d at 634–35; *see also Blanton*, 185 S.W.3d at 611.   Moreover, since Defendants failed to adhere to State Auto's SPOL notice requirement, then they must show substantial compliance with policy requirements to avoid the penalty for failing to comply. *Hanover Ins. Co. of N.Y. v. Hagler*, 532 S.W.2d 136, 138 (Tex. Civ. App.—Dallas 1975, writ ref'd n.r.e.).

A SPOL requirement is material to the insurance contract because it is a critical part of the bargained-for-exchange that enables an insurer "to properly investigate the circumstances of the loss while the occurrence is fresh in the minds of witnesses, to prevent fraud, and to enable it to form an intelligent estimate of its rights and liabilities so that it may adequately prepare to defend any claim that may arise." *Id.* However, "an insurer must offer 'more than the mere fact that it cannot employ its normal procedures in investigating and evaluating the claim.'" *Hamilton Props.*, Civil Action No. 3:12-CV-5046-B, 2014 WL 3055801, at *9 (quoting *Trumble Steel Erectors*, 304 F. App'x at 244).

Therefore, prejudice from a failure to substantially comply with a policy requirement arises from an inability to: (1) investigate the circumstances of an occurrence; and (2) prepare adequately to adjust or defend any claims, "not merely to prepare for trial." *Blanton*, 185 S.W.3d at 615.

In *Flores*, the court held that a six-month delay in notice to the insurer after the insured saw mold on a bathroom ceiling and wall was unreasonable as a matter of law. 278 F. Supp. 2d at 815. Based solely on the delay in notice, the court granted summary judgment for the insurer. *Id.* Likewise, in *Tellez v. Encompass Insurance Company of America*, the court noted that a delay of sixty-eight days after an occurrence did not meet the policy's requirement of notification "as soon as practicable" as a matter of law. No. 5:02-CV-214, 2004 U.S. Dist. LEXIS 32406, 2004 WL 742912 at *5 (E.D. Tex. Jan. 27, 2004) (citing *Assicurazioni Generali, SpA v. Pipe Line Valve Specialties Co.*, 935 F. Supp. 879, 888 (S.D. Tex. 1996)).

Recently, in *Pamphile v. Allstate Texas Lloyds*, this Court set aside Allstate's argument that it could deny coverage to an insured simply because she failed to adhere to time requirements for submitting a SPOL. No. 3:17-CV-0832-B, 2017 U.S. Dist. LEXIS 164976, at

*8 (N.D. Tex. Oct. 4, 2017).  In coming to its holding, the court was persuaded by analogous facts and holdings in recent cases that concluded *de minimis* violations of notice requirements in insurance policies are not grounds for denying coverage and that substantial compliance with policy requirements, like submitting a SPOL, prevented the insurer from denying coverage. *Id.*[5]

Here, Defendants' failure to provide State Auto with notice of all its alleged damages arising from the 2014 storm until 2018 and failure to provide a SPOL for the newly alleged damage exceeds the eight-month, sixty-eight day, and six-month limits of notice set forth in *Hamilton, Tellez,* and *Flores.*  Furthermore, Defendants' failures are substantially unlike the *de minimis* notice violations discussed in *Pamphile, Rogers, Wilson, Lopez, and Polen* because State Auto has never received a SPOL for the newly alleged damage and State Auto first received notice of the newly alleged damage two years after the storm. ***Exs. F, p. 504-508, H, p. 517-521, J, p. 745-749, N, p. 1163-1177***; *see infra* FN #4.  Therefore, Defendants have failed to substantially comply with the policy's requirements.

Defendants' failure to provide an SPOL and unreasonably delayed notice are prejudicial material breaches of the insurance contract.  First, eye witness and expert recollections of the 2014 storm are murky at best, as indicated by Pablo Loza's inconsistent attempts to recall the specifics surrounding the storm and Coleman's unsubstantiated insistence that a tornado touched down "across the street" from the Property. *See **Ex. R, p. 1207*** at 23:11-25, 24:1-12; ***Ex. S, p. 1214*** at 33:3-12.  Second, Defendants' failures prevented State Auto from collecting all of the necessary information and evidence, while it was fresh, to investigate the validity of the claim

---

[5] The court citing *Rogers v. Allstate Vehicle & Prop. Ins. Co.*, No. 3:17-CV-0455-M, 2017 U.S. Dist. LEXIS 118588, 2017 WL 3215292 (N.D. Tex. July 28, 2017); *Wilson v. Allstate Ins. Co.*, No. 4:16-CV-970, 2017 U.S. Dist. LEXIS 54239, 2017 WL 1313854 (E.D. Tex. Apr. 10, 2017); *Lopez v. Allstate Vehicle & Prop. Ins. Co.*, No. 4:17-CV-00103, 2017 U.S. Dist. LEXIS 51058, 2017 WL 1294453 (E.D. Tex. Apr. 4, 2017); *Polen v. Allstate Vehicle & Prop. Ins. Co.*, No. 4:16-CV-842, 2017 U.S. Dist. LEXIS 22619, 2017 WL 661836 (E.D. Tex. Feb. 17, 2017) and explaining that it found a host of recent cases persuasive in coming to its conclusion because the insured in each case substantially complied with policy requirements.

and settle the claim or shield itself from potential fraud. *See Ex. T, p. 1220* at 31:17-25; 32:1-4;

32:19-25; 33:1-3; *Ex. U, p. 1229* at 92:13-25.   Third, Defendants' fluid damage estimates have

handicapped State Auto's ability to investigate the claim because Defendants continue to fail to

substantially comply with other policy requirements, i.e. submitting a SPOL. *Ex. D, p. 490-495,*

*E, p. 497-502, F, p. 504-508, H, p. 517-521, J, p. 745-749, N, p. 1163-1177.*   Lastly,

Defendants' failure to cooperate with the investigative process is a material breach of the

bargained-for-exchange because without their cooperation State Auto cannot determine, with any

kind of certainty, the exact nature and extent of Defendants' indecisive damage claims.

In sum, Defendants' failure to adhere to the policy's SPOL and notice requirements, after

they alleged new damages, significantly prejudiced State Auto's attempts to resolve Defendants'

claim, adhere to its duties under the policy, shield itself from potential fraud, and exceed the

reasonable notice standards set forth by Texas courts.   Therefore, State Auto is entitled to

summary judgment because the evidence conclusively establishes that there is no genuine issue

of material fact with respect to Defendants' prejudicial violations of policy requirements.

## E. The evidence affirmatively refutes at least one essential element of Defendants' claims of violations of Chapters 541 and 542 of the *Texas Insurance Code* and the *Texas Deceptive Trade Practices Act.*

Defendants' counterclaims that State Auto violated Chapter 541 and Chapter 542 of the

*Texas Insurance Code* and the *Texas Deceptive Trade Practices Act* are based on their allegation

that State Auto unreasonably delayed the investigation, failed to properly investigate Defendants'

claim, hired biased consultants, failed to pay for the proper repair of Defendants' property, and

failed to pay the entire agreed-upon amount.[6]   However the evidence attached hereto

---

[6] An essential element of each of these causes of action requires Defendants to prove that State Auto committed an act or practice in violation thereof. *See* TEX. INS. CODE §§ 541.002(2), .15 (requiring a showing that the at-fault party engaged in an act or practice that violated either Chapter 541 of the Texas Insurance Code, subchapter B; Texas Business & Commerce Code § 17.46(b)); TEX. INS. CODE §§ 542.051, .056, .057, .060 (requiring a showing

affirmatively refutes these contentions and shows that State Auto did not engage in any act or practice that would have constituted a violation of Chapter 541 and 542 of the *Texas Insurance Code*, the DTPA,[7] or the *Texas Business & Commerce Code.*

As thoroughly set forth and explained in greater detail in the sections above, there is no merit to Defendants' assertion that State Auto engaged in any act or practice that would constitute a violation of Chapters 541 and 542 of the *Texas Insurance Code*, the DTPA, or the *Texas Business & Commerce Code.* This claim was timely investigated as is evidenced by the numerous Property inspections that began two days after the storm and the expert report issued two months later. *See* Part II.B, *supra.* In compliance with the 15-day deadline set forth in the Insurance Code, State Auto sent a letter to Defendants 13 days after the storm requesting additional information from same by virtue of a SPOL, enclosed therein, in order to properly evaluate the claim. *Ex. D, p. 490-495* at 4. Based on the results of the Property inspections, State Auto accepted the claim in part and denied in part by July 14, 2014. *Ex. E, p. 497-502* State Auto then paid Defendants what was owed under the Policy. [Doc. 6 at 2]. Furthermore, there is no evidence that State Auto's engineers were biased in this case. *See* Part IV.B, *supra.* Given that the evidence conclusively refutes an essential element of each of these causes of action, State Auto is entitled to summary judgment as a matter of law on Defendants' claims for breach of the insurance code and the DTPA as a matter of law.

---

that the at-fault party violated Chapter 542 by not timely (i) acknowledging, investigating, or requesting information about the claim; (ii) accepting, rejecting, or extending the deadline for deciding the claim; or (iii) paying the claim); TEX. BUS. & COMM. CODE § 17.41–.63 (requiring a showing that the at-fault party committed a wrongful act under the DTPA).

[7] Another essential element of the DTPA is that an entity must qualify as a consumer. TEX. BUS. & COMM. CODE § 17.50(a). "Consumer" is defined as an individual, partnership, corporation, this state, or a subdivision or agency of this state who seeks or acquires by purchase or lease, any goods or services. *Id.* § 17.45(4). However, the term does not include a business consumer that has assets of $25 million or more, or that is owned or controlled by a corporation or entity with assets of $25 million or more. *Id.* In light of the definition of consumer, it is debatable whether Defendants even qualify as a consumer under the DTPA.

## V.
### CONCLUSION

Defendants' claims against State Auto are without merit. Defendants have not adduced sufficient evidence to support their claims and, in fact, the evidence produced hereto affirmatively shows that there is no genuine dispute of material fact with respect to any of Defendants' counterclaims. State Auto timely investigated Defendants' claim for both wind and hail damage and inspected each of the roofs on the Property before concluding that there was no hail or wind damage caused by the April 2014 storm. State Auto also paid over $1,000,000 to Defendants for what damage was observed to the Property. Additionally, Defendants have not produced evidence to overcome their burden under the concurrent causation doctrine. Because Defendants have not adduced evidence that would allow the factfinder to allocate damages between covered and excluded perils, this is fatal to their recovery. For these reasons, State Auto is entitled to summary judgment on Defendants' counterclaims as a matter of law.

State Auto respectfully requests that the Amended Motion for Summary Judgment be set for hearing with notice to Defendants, and that upon completion of the hearing the Court grant this Amended Motion for Summary Judgment and grant State Auto judgment against Defendants that Defendants take nothing by this suit, and that costs be awarded to State Auto.

Respectfully submitted, this 30th day of August, 2018.

/s/Charles B. Mitchell, Jr.
**CHARLES B. MITCHELL, JR.**
State Bar No. 14207000
Federal ID No. 16627
**MICHAEL SHANE O'DELL**
State Bar No. 24065835
NAMAN, HOWELL, SMITH & LEE, PLLC
306 West 7th Street, Suite 405
Fort Worth, Texas 76102-4911
Telephone:    817.509-2040
Facsimile:    817.509-2060
Email: charles.mitchell@namanhowell.com
Email: sodell@namanhowell.com

**ATTORNEYS FOR PLAINTIFF,**
**STATE AUTOMOBILE**
**MUTUAL INSURANCE COMPANY**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing has been served on the 30th day of August, 2018, as follows via E-mail and via the Court's ECF system, which sent notification to the following:

*Via E-mail and Via E-Service*
Robert W. Loree
Todd Lipscomb
Cassandra Pruski
Law Offices of Loree & Lipscomb
The Terrace at Concord Park
777 E. Sonterra Blvd., Suite 320
San Antonio, Texas 78258

*Via E-mail and E-Service*
Christopher D. Kratovil
Alison R. Ashmore
DYKEMA COX SMITH
1717 Main Street, Suite 4200
Dallas, Texas 75201

/s/Charles B. Mitchell, Jr.
Charles B. Mitchell, Jr.